## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.M., M.M., A.M., and I.M.**

**No. 21-0932** (Kanawha County 20-JA-380, 20-JA-381, 20-JA-382, and 20-JA-383)

## MEMORANDUM DECISION

Petitioner Mother J.M., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's October 18, 2021, order terminating her parental rights to L.M., M.M., A.M., and I.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew Smith, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she substantially complied with the terms of her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed a child abuse and neglect petition alleging that the children, ages eleven through fifteen, were living with the father when he disappeared for twenty-four hours and the individual left to care for the children was arrested on outstanding warrants, leaving the children without any adult supervision. The DHHR alleged that the family had a lengthy history of Child Protective Services ("CPS") intervention. The petition referred to an incident one year prior when then-eleven-year-old A.M. was struck by a vehicle while playing with friends while unsupervised. Petitioner was incarcerated at the time of the event and was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

furloughed to see A.M. while he was in the hospital. However, while on furlough, petitioner stabbed the father with a screwdriver and struck I.M. She was arrested for domestic battery and felony child abuse. In the petition, the DHHR alleged further incidents of domestic violence, including an incident in 2011 when petitioner threw cinder blocks and rocks at the children's home while the children and the father were inside. The DHHR also alleged that petitioner and the father failed to provide the children with necessary food, clothing, supervision, and housing, which placed the children at risk of harm.

At a preliminary hearing in August of 2020, the DHHR presented evidence consistent with the petition, which was not challenged by either parent. The circuit court ratified the removal of the children from the parents' custody. The circuit court ordered the DHHR to provide reunification services to petitioner.

The circuit court held an adjudicatory hearing in October of 2020, during which the DHHR presented evidence as to petitioner's neglect of the children. The court also heard testimony that petitioner was compliant in reunification services thus far and produced four consecutive negative drug screen results. Petitioner presented no evidence and did not contest the allegations. The circuit court found that the parents engaged in ongoing domestic violence that impacted their ability to parent the children. The circuit court adjudicated the children as neglected children and petitioner as an abusing parent. Thereafter, petitioner orally moved for a post-adjudicatory improvement period, which the circuit court held in abeyance, awaiting a written motion.

Petitioner filed a motion for an improvement period, which the circuit court addressed in November of 2020, when the court heard evidence that petitioner continued to be compliant with all court ordered services, including testing negative for controlled substances. The DHHR recommended that petitioner's motion be granted. Following petitioner's testimony in support of her motion, no party objected. The circuit court granted her motion for an improvement period and ordered that she participate in the following terms of her improvement period: individualized parenting and adult life skills classes; random drug screening; supervised visitation with the children; and mental health treatment.

In February of 2021, the circuit court heard testimony that petitioner continued to substantially comply with the terms of her improvement period, and the court ordered that her improvement period continue. Again, in May of 2021, the court heard testimony that petitioner was generally compliant with services. However, the DHHR presented testimony that petitioner was in a physical altercation with M.M., during which she struck the child in the head. Petitioner also tested positive methamphetamine once in February, after her improvement period was continued. Following that positive result, petitioner's drug screen results were all negative. The DHHR initially requested that the court set the case for disposition but agreed to an extension of petitioner's improvement period if she agreed to participate in family therapy. Hearing no objection, the circuit court granted petitioner a three-month extension to her improvement period upon her request.

The circuit court convened for a final review of petitioner's improvement period in August of 2021. The DHHR recommended that continued services be ordered and that the case

be set for disposition. It reported that petitioner threatened to fight one of the children's foster parents, which necessitated investigation. The DHHR also reported that petitioner may have lost her employment and had not been in contact with services providers "for multiple weeks." Additionally, the court heard testimony from fifteen-year-old M.M., who stated that she believed it was in the children's best interest to be returned to petitioner's custody. She further testified that if petitioner's parental rights were terminated, the children would want post-termination visitation with her.

The circuit court held the final dispositional hearing in October of 2021. Petitioner did not appear, but counsel represented her. A DHHR worker testified that petitioner was "nonresponsive" to the DHHR's attempts to contact her, as well as attempts by her service providers. She explained that she attempted to verify petitioner's current address but was unable to do so. The evidence showed that petitioner had failed to participate in random drug screening since mid-August of 2020 and had not attended a supervised visitation with the children since July of 2020. The worker further testified that petitioner made threats to individuals involved in the proceedings and threats to the children. According to the DHHR worker, M.M. received a picture of petitioner that depicted her in "poor physical health." M.M. sent the picture to petitioner and accused her of caring more about abusing substances than her children and stated that she "gave up" on her children. Petitioner replied that she would "beat [M.M.'s] a**" and called her vulgar names. Petitioner presented no evidence and suggested no alternative to the DHHR's recommendation to terminate her parental rights.

Ultimately, the circuit court found that petitioner failed to remedy the conditions that gave rise to the petition. Further, the court found that petitioner failed to meaningfully avail herself of court ordered services and that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. Finally, the court found that termination of petitioner's parental rights was the least restrictive dispositional alternative and in the best interest of the children. Accordingly, the circuit court terminated petitioner's parental rights to the children by its October 18, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[2]The father's parental rights were also terminated. According to the parties, the permanency plan for the children is legal guardianship in their respective placements.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she substantially complied with the terms of her improvement period and "reached a level of functioning sufficient to care for her children." Petitioner asserts that she participated in services for nearly one year and received good reports from her service providers. However, she candidly admits that "she had ceased participating" at the end of her improvement period but argues that she had complied for a sufficient time "to justify attempting to return to compliance." We find petitioner's argument unpersuasive.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Finally, this Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child[ren]." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

Here, we agree with the circuit court's determination that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. While we acknowledge petitioner's substantial participation in her family case plan, her actions in the final months of the proceedings are akin to casting off her parental responsibilities and deserting her children. It is unclear what drove petitioner to cease any and all cooperation with the DHHR, but the cause need not be identified. It is axiomatic that a parent must be involved in the proceedings to be reunified with their children. Petitioner was well aware of her responsibility to participate in and complete her family case plan, but she made a choice to ignore that responsibility. Simply put, the best interests of the children would not be served in the placement of a parent who has demonstrated that she would desert them without even an explanation. Even if the facts supported an attempt at reunification, the DHHR could not even verify petitioner's address and would have no way of beginning reunification. Upon our review, it is clear that the circuit court did not err in finding that there was no reasonable likelihood that

4

the conditions of neglect or abuse could be substantially corrected in the near future or that termination of petitioner's parental rights was in the children's best interests.

It is worth noting that petitioner did not request additional time to "return to compliance" below. In fact, petitioner did not argue any position at the dispositional hearing; nor did she present any evidence or question any witnesses. She did not offer an excuse for her sudden nonparticipation in the proceedings, remind the court of her once substantial compliance with her improvement period, or appeal to its good graces by requesting a continuance so that she might begin to comply. Nevertheless, she now argues that the circuit court should have terminated only her custodial rights to the children because the children had been placed with family and termination of her custodial rights only would allow petitioner "to come back to court and demonstrate that she was again on the right track to be a parent."

Petitioner's argument focuses on her own best interest and ignores that of her children. This Court has previously considered that "[e]nsuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). Moreover, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As stated above, the circuit court properly found that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. Thus, the circuit court was well within its discretion to terminate petitioner's parental rights. The circuit court's termination of petitioner's parental rights provided the children finality and permanency, and we find no error in its ultimate determination.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 18, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker

5

Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment